IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ESTUS and ) | |
| JOAN MARIE ESTUS, his wife, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 04-3209-CV-S-GAF |
| ) | |
| JOHN OLIVER PERRY, JR. ) | |
| and ) | |
| NEW PRIME, INC., ) | |
| and ) | |
| SUCCESS LEASING, INC. ) | |
| ) | |
| Defendants. ) | |

## ORDER

Presently before this Court is a Motion to Strike filed by the Defendants, John Oliver Perry, Jr. and New Prime, Inc. (collectively "Defendants"). (Doc. #45). The Defendants argue that certain portions of the complaint which detail David Estus' injuries should be stricken because they are inconsistent with a prior decision by the Pennsylvania Workers' Compensation Court which determined the nature and extent of Mr. Estus' injuries. Id. The Plaintiffs, David Estus and Joan Marie Estus (collectively "Estus") oppose this Motion arguing that the nature and extent of Estus' injuries were not "actually litigated" in the hearing before the Pennsylvania Workers' Compensation Court because Estus did not present any evidence of his injuries. (Doc. #50). Upon careful consideration of the facts and arguments submitted by the parties, the Defendants' Motion to Strike is GRANTED in part and DENIED in part.

1

**DISCUSSION**

**I.     Facts**

Estus filed this action seeking compensation for injuries he suffered in a motor vehicle accident which occurred at a truck stop in Tucson, Arizona on October 14, 2001. Pl.'s Compl. ¶ 8. While standing upright in the sleeper compartment of his parked vehicle, a second tractor-trailer, operated by Perry, drove up on the right side of Estus' vehicle and turned left prematurely. Id. Consequently, the vehicle operated by Perry struck the right front side of Estus' vehicle. Id. Estus claims an impressive assortment of injuries as a result of this incident including:

> (a) Multiple trauma soft tissue injuries;  (b) Left sided head pain and transient visual abnormalities;  (c) Left elbow pain with a left cubital tunnel syndrome; (d) Hematoma on temporal area on left side of head; (e)  Effusion in left olecranon area; (f)  Visual abnormalities with blurring of vision and inability to focus;  (g)  Weakness and a numb feeling in the lateral aspect of left leg;  (h) Bilateral carpel tunnel syndrome;  (i) Ulnar entrapment neuropathy of left elbow and bilat. mild carpal tunnel;  (j) Contusion left elbow; (k) Traumatic headaches;  (l) Facial pain.

Pl.'s Compl. ¶ 12. Estus asserts that these injuries necessitate medical care expenses which exceed the sum recoverable under the limits set in 75 Pa. C.S.A. Section 17111. Pl.'s Compl. ¶ 13. As a result of these injuries, Estus claims that he suffers severe physical pain and discomfort which interferes with his ability to engage in normal daily activity. Pl.'s Compl. ¶ 14. Estus contends that he has been deprived of life's "social, familial, recreational and economic pleasures" and suffers from "mental anguish, depression and humiliation" as a result of the accident. Pl.'s Compl. ¶ 14, 15. Estus further claims that his injuries have resulted in "a loss of earnings and future earnings capacity." Pl.'s Compl. ¶ 16.

Estus filed a claim with the Pennsylvania Department of Labor and Industry, Bureau of Workers' Compensation against his employer, Calex Express, Inc. ("Calex"), to recover damages for the bodily

injuries and lost income he suffered as a result of the aforementioned October 14, 2001 accident. (Doc. #45, Ex. D). Three hearings were held on Estus' claim. Id.

Estus appeared and was represented by an attorney at the first hearing held on August 13, 2002 which disposed of certain preliminary matters. Id. Estus' attorney withdrew his appearance prior to the second hearing which was held on October 29, 2002. Id. At the second hearing, "a lengthy off-the-record discussion" was held between Estus and the attorney representing Calex. Id. Estus requested additional time to retain a new attorney. Id. The Workers' Compensation Judge advised Estus that if he did not hire an attorney, he would need to present evidence of his disability at the third hearing. Id. The Judge further advised Estus that if he sought disability beyond 52 weeks, Estus would need to present medical testimony. Id. Estus appeared at a third hearing held on January 24, 2003, but was not represented by an attorney. Id. At the third hearing, Estus "left the hearing room without submitting any evidence and requested that the case be closed." Id.

The Workers' Compensation Judge implicitly denied Estus' request by proceeding to consider the merits of Estus' workers' compensation claim. The Worker's Compensation Judge found: "[Calex] admits that on October 14, 2002, [Estus] suffered a work injury in the nature of a left elbow contusion . . . [Estus] has not submitted any competent evidence establishing any other injuries or disability from the events which occurred on October 14, 2001." Id. The Order concluded that Estus' claim was "GRANTED in part and DENIED in part." Id.

The Defendants argue that the doctrine of collateral estoppel applies to the findings of the Pennsylvania Workers' Compensation Judge regarding the extent of Estus' injuries. (Doc. #45). As such, the Defendants contend that Estus is precluded from re-litigating this issue in the present case. Id. Estus

3

argues that he is not collaterally estopped from re-litigating the extent of his injuries because this issue was not "actually litigated" in the hearing before the Worker's Compensation Judge as Estus failed to present any evidence on the issue. (Doc. #50).

## II. Legal Analysis

### A. *The Full Faith and Credit Clause mandates application of Pennsylvania law.*

Before proceeding to analyze the merits of the Defendants' Motion to Strike, it is necessary to resolve the choice of law issues inherent in this case. The Defendants argue that Arizona law on collateral estoppel should be applied based on this Court's previous ruling that "the substantive law of Arizona should be applied to determine the rights and liabilities of the parties in this action." (Doc. #45, *See also* Doc. # 25). Estus agreed that Arizona law should apply to the collateral estoppel issue because that is where the incident occurred. (Doc. #50).

However, both parties have failed to recognize that the facts of the present case invoke the application of the Full Faith and Credit Clause. The Full Faith and Credit Clause of the U.S. Constitution (Art. IV, § 1) requires each state to give to the judgment of any other state the same effect that judgment would have in the state which rendered it. A federal statute, 28 U.S.C. § 1738, further requires the federal courts to give Full Faith and Credit to state court decisions. 28 U.S.C. § 1738 provides that "the records and judicial proceedings of any court [of] any state . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State . . . from which they are taken."

Although 28 U.S.C. § 1738 does not specifically address the findings of state administrative agency judges, the Supreme Court has held that the same result should occur when a state administrative agency

4

has made a judicial-type decision. *See* <u>University of Tennessee v. Elliott</u>, 478 U.S. 788 (1996) (holding that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.")

Here, the Defendants argue that Estus should be collaterally estopped from arguing an issue resolved by a Pennsylvania Workers' Compensation Judge in an action presently before a federal district court. Where a federal district court is considering a judgment rendered by a state administrative agency, <u>University of Tennessee v. Elliott</u> has established that the federal court must grant the decision of the state administrative agency the same collateral estoppel effect as it would have in that state. Therefore, as the decision of the Workers' Compensation Judge was rendered in Pennsylvania, the decision must be given the same collateral estoppel effect in this Court as it would have in Pennsylvania. Accordingly, the Full Faith and Credit Clause requires this Court to apply the law of Pennsylvania to the collateral estoppel argument raised by the Defendants in their Motion to Strike.

### B. *The doctrine of collateral estoppel precludes Estus from re-litigating the nature and extent of his injuries.*

Estus argues that the doctrine of collateral estoppel should not apply because Estus did not present any evidence regarding the nature and extent of his injuries at the hearing before the Workers' Compensation Judge; therefore, Estus claims the issue was not "actually litigated." The Pennsylvania Supreme Court has concisely stated the requirements of the doctrine of collateral estoppel as follows:

> The objecting party must show that the fact or facts at issue in both instances were identical and that these facts were essential to the first judgment and were actually litigated in the first cause. We have also required that the party against whom a plea of collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in a prior

action.

GPU Indus. Intervenors v. Pennsylvania Pub. Util. Comm'n, 628 A.2d 1187, 1192-93 (Pa. 1993) (internal citations omitted). The Restatement (Second) of Judgments § 27 attempts to define when an issue is "actually litigated."[1] Comment (d) of the Restatement (Second) of Judgments § 27 addresses "when an issue is actually litigated:"

> When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment (see Illustration 10), a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.

The Reporter's Note to Comment (d) of the Restatement (Second) of Judgments § 27 further provides, "it is indicated in this Comment that an issue may be litigated and determined if the party with the burden of proof on that issue fails to introduce any evidence with respect to it or introduces evidence but fails to sustain his burden." In support of this statement, the Reporter's Note cites Patterson v. Saunders, 74 S.E.2d 204, 207 (Va. 1953), *cert. denied*, 345 U.S. 998 (1953), *reh. denied*, 346 U.S. 842 (1953)[2] which provides, "the general rule is that a judgment, in a former action, based upon an insufficiency of

---

[1] The Pennsylvania Supreme Court has found that "the essence of the law of collateral estoppel is 'merely a judicial translation of the Restatement, Judgments, § 68, which is the accepted law in Pennsylvania.'" GPU Indus., 628 A.2d at 1193 *quoting* Schubach v. Silver, 336 A.2d 328, 333 (Pa. 1975). "Section 68 has been superseded by the Restatement (Second) of Judgements § 27 (1980)." GPU Indus., 628 A.2d at 1193. As such, the Court finds that Pennsylvania courts would apply the principles of the Restatement (Second) of Judgments § 27 to the facts of the present case.

[2] The Reporter's Note also cites Nichols & Co. v. United States, 586 F.2d 826 (C.P.A. 1978) and Slater v. Skirving, 51 Neb. 108, 70 N.W. 493 (1897) in support of this statement.

6

evidence is sufficient to support the application of the doctrine of res judicata."

Although the Pennsylvania courts do not appear to have ruled on the specific issue of whether collateral estoppel applies when a party has failed to present any evidence on the issue in the prior proceeding, the position of the Restatement (Second) of Judgments § 27 concerning the actual litigation of issues upon which no evidence has been presented is supported by other legal scholars. According to Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4419:

> The general rule is that issue preclusion applies to an issue framed in an early action even though little or no evidence at all was introduced . . . it is also said that preclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way. In some circumstances even an explicit attempt to abandon an issue may fail if a later court concludes that it was necessarily resolved by the ensuing judgment.

Wright, Miller & Cooper support their position by reasoning that

> [O]nce an issue has been framed, the opposing party has a right to rely on the expectation that it will be resolved conclusively in that action . . . considerable effort may be expended in preparing to meet a case that is never made. In the interest of fostering repose and reliance, an issue once framed should be precluded unless withdrawn.

Here, Estus asserted a workers' compensation claim against his employer in a Pennsylvania Workers' Compensation Court seeking to recover damages for the injuries he suffered in the October 14, 2001 motor vehicle accident at an Arizona truck stop. When asserting a workers' compensation claim, Estus bears the burden of proving the nature and extent of his injury.[3] Estus will not be allowed to recover damages for an injury which he failed to prove he sustained. As the nature and extent of Estus' injury was

---

[3]"The burden of proof for a claim petition is on the claimant to prove all of the necessary elements for an award . . . The claimant must establish that the injury was sustained during the course and scope of employment and is causally related thereto." Delaware County v. W.C.A.B. (Baxter Coles), 808 A.2d 965, 967-68 (Pa. 2002)

7

Case 6:04-cv-03209-GAF    Document 51    Filed 08/08/05    Page 7 of 10

a prima facie element of his workers' compensation claim, it was necessarily raised in the pleadings and considered by the Workers' Compensation Judge who granted in part and denied in part Estus' claim. Therefore, the nature and extent of Estus' injury was "actually litigated" in the hearing before the Workers' Compensation Judge.

Estus made a feeble attempt to withdraw his workers' compensation claim at the third hearing by requesting that his claim be dismissed. However, the Workers' Compensation Judge rejected Estus' request and proceeded to decide Estus' claim on the merits. As the Judge was required to determine the nature and extent of Estus' injury when considering Estus' workers' compensation claim on the merits, this Court does not find that the issue was effectively withdrawn.

Estus relies entirely on an unpublished opinion by the Ninth Circuit Court of Appeals to support his argument that the nature and extent of his injury was not "actually litigated" in the hearing before the Workers' Compensation Judge. In Miyamoto v. Otis Elevator Co., 26 F.3d 131, 1994 WL 249982, *1 (9th Cir. 1994) (unpublished), the Ninth Circuit rejected the defendant's argument that the plaintiff was estopped from contending she was injured in a fall because her workers' compensation claim was denied. Id. The Ninth Circuit noted that although the plaintiff filed a workers' compensation claim, she failed to produce any evidence in support of her claim, she did not contest the denial of her claim and the record revealed that no hearing was ever held on her claim. Id. Based on these facts, the Ninth Circuit concluded that the decision by the Office of Workers' Compensation Programs should be treated as a default judgment. Id. As default judgments are not given collateral estoppel effect, the Ninth Circuit found that the district court did not err in refusing to give collateral estoppel effect to the decision by the Office of Workers' Compensation Programs.

8

Miyamoto is readily distinguishable from the present case. Here, the record reveals that three hearings were held on Estus' workers' compensation claim. In the second hearing, the Workers' Compensation Judge specifically advised Estus of the type of evidence necessary to support his claim. Estus appears to have diligently pursued his claim from the time it was filed on July 18, 2002 until the third hearing on January 24, 2003. Such conduct by Estus is inconsistent with a default judgment which is entered when a party fails to appear or otherwise pursue his or her claims. As Estus was actively pursuing his workers' compensation claim by appearing at three separate hearings, the decision by the Workers' Compensation Judge granting in part and denying in part Estus' claim cannot be considered analogous to a default judgment. Therefore, the Court rejects Estus' argument that the holding in Miyamoto should govern the facts of the present case and the decision of the Workers' Compensation Judge regarding the nature and extent of Estus' injury should be given collateral estoppel effect.

## **CONCLUSION**

Given the ultimate finding of the Workers' Compensation Judge that Estus did not submit any competent evidence establishing any injuries other than a left elbow contusion, the Court finds that Estus is collaterally estopped from asserting any injuries, other than those related to his left elbow, as a result of the October 14, 2001 motor vehicle accident at an Arizona truck stop. As such, subparagraphs (a), (b), (d), (f), (g), (h), (k), and (l) of Paragraph 12 shall be stricken in their entirety and the portion of subparagraph (i) of Paragraph 12 which provides "and bilat. mild carpal tunnel" shall also be stricken. To this extent, the Defendants' Motion to Strike is GRANTED.

The Defendants further request that the Court strike the allegations of Paragraph 13, Paragraph 14, Paragraph 15 and Paragraph 16 of the Complaint. Finding that the Defendants have failed to present

sufficient evidence that the issues contained in these paragraphs were actually litigated at the hearing before the Workers' Compensation Court, the Court denies the Defendants' request as strike Paragraphs 13-16. To this extent, the Defendants' Motion to Strike is DENIED.

**IT IS SO ORDERED.**

<u>/s/ Gary A. Fenner</u>
GARY A. FENNER, JUDGE
United States District Court

DATED:   August 8, 2005